[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM APPROVING SETTLEMENT AND FEES
The plaintiffs have submitted their application for approval of the settlement of this Class Action in which the class members consist of more than 92,000 present and former owners of variable premium life insurance policies issued by defendants, Security Connecticut Life Insurance Company and Security Connecticut Corp. The class action was filed against the defendants and Lincoln National Life Insurance Company in 1995 and alleged breach of contract, breach of covenant of good faith and fair dealing, constructive trust, fraud and violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110b et seq. ("CUTPA") allegedly arising when the defendants improperly set the credited interest and cost of insurance rates for certain insurance policies which it issued.
Since the application is the result of a negotiated settlement between the plaintiffs and the defendants, no one appeared at the hearing to oppose any aspect of the settlement.[1] This happens often in so-called "common-fund" class actions like the present case, leaving to the court the task of making sure the settlement is in the best interest of the plaintiffs and the attorneys' fees sought by the plaintiffs' counsel are reasonable.[2]
The Settlement Agreement provides that Security-Connecticut will pay in cash and by credits to the cash value of class members' life insurance policies Twenty Million Two Hundred Fifty Thousand Dollars ($20,250,000), less amounts the court awards for CT Page 10792 class counsel's attorneys fees, expenses and incentive awards to plaintiffs, as follows: a) Ten Million Two Hundred Fifty Thousand Dollars ($10,250,000) (less the fees, expenses) paid in credits to cash values of class members' insurance policies and in cash (for former policy owners) upon final approval of the settlement by the Court; b) Ten Million Dollars ($10,000,000) paid monthly over five years by crediting the cash values of the insurance policies owned by Class members. Any Class member who no longer owns a Class Policy and who wants to receive the benefit of equivalent credits may do so by reinstating that Class Policy on or before the later of December 31, 1999 or six months after the Effective Date of the settlement subject to current underwriting requirements. In order to receive benefits for the entire five-year period, a Class member must retain the policy throughout that period.
At the hearing on the approval of the Settlement Agreement, the plaintiffs' counsel stated that if a class member does not maintain his or her policy in effect for five years, then his or her proportionate share of the settlement reverts to the defendants. While the plaintiffs provided the court with the affidavit of an actuary, Melvin Gold, the affidavit contained no opinion as to the present value often million dollars to be paid out over five years. The court also lacked information as to the projected number of class members whose policies will lapse over a five year period. Without that information, the court is unable to assess the true value of the second component of the settlement and can assume only that it has a value somewhere between zero and the present value often million dollars paid over five years.
The Settlement Agreement also provides class members with the right to purchase an annuity from a company affiliated with the defendants for amounts between $10,000 and $100,000. Security-Connecticut will add to the value of the annuity described below, 5.75% of the dollar amount the class member invests in the first year of ownership. This alternative is available to every class member, and it delivers a larger dollar benefit than the maximum damages most class members incurred, but an investment of at least $10,000 by a class member is required to obtain the benefit. The plaintiffs have submitted the affidavit of an expert in the field of variable annuities, Charles Kavitsky, who opines that the variable annuity is an excellent value and that "many" class members will purchase such annuities. Unfortunately the word "many" offers very little aid CT Page 10793 to the court in assessing the monetary value of this component of the settlement.
The settlement releases defendants from the breach of contract and other claims plaintiffs made in this case. Other claims, such as claims of deceptive sales practices relating to interest rates and investment returns pending in two other class actions against defendants, are not affected by the settlement of this case. The release also excludes all claims arising after the January 28, 1999 settlement date.
Specifically, the Settlement Agreement provides that the Final Judgment shall contain the following release:
 All Class members who did not request exclusion from the Class and all persons in privity with them, including without limitation insureds and policy beneficiaries, are forever barred from asserting, instituting, maintaining or prosecuting against Security-Connecticut Life Insurance Company and Security-Connecticut Corporation, or their past or present officers, directors, agents, employees, parent company, affiliates, shareholders, subsidiaries, successors, assigns and/or legal representatives, any claim, demand, action, cause of action or liability, including without limitation claims of breach of contract, breach of the covenant of good faith and fair dealing, constructive trust, fraud in the sale of insurance contracts, fraud, and unfair trade practices under common law and state and federal statute, which they ever had, now have, or could have had against Security-Connecticut Life Insurance Company or Security-Connecticut Corporation, or their past or present officers, directors, agents, employees, parent company, affiliates, shareholders, subsidiaries, successors, assigns and/or legal representatives with respect to the determination of any flexible policy components, such as the cost of insurance, the performance of the terms of flexible premium life insurance policies, and the manner in which the flexible policy components were described or disclosed at the time of sale, excluding only misrepresentation claims relating to the description and disclosure of interest rates and investment returns (such as are at issue in a vanishing premium case), before (but not after) the Effective Date of this CT Page 10794 Settlement; and Security-Connecticut Life Insurance Company and Security-Connecticut Corporation, their past and present officers, directors, agents, employees, parent company, affiliates, shareholders, subsidiaries, successors, assigns and/or legal representatives shall be forever released and discharged from any and all liability in respect of said claims; provided, however, that any individual claim of a Class member for benefits under the terms of the Class Policies that does not relate to the claims asserted on a class-wide basis in this litigation, is specifically reserved and is not released, and further provided that this Final Judgment and Order shall not release any party from its obligations under the Agreement.
Until the early 1970's the size of the fee award in a class action was left to the court's discretion, and was generally calculated based on a percentage of the fund. Report of the ThirdCircuit Task Force on Court Awarded Attorney Fees,108 F.R.D. 237, 242 (1985). "Press reaction to these awards, and criticism from within the profession that the fees were disproportionate to the actual efforts expended by the attorneys, generated pressure to shift away from the percentage-of-recovery approach."
In Lindy Brothers Builders, Inc. of Philadelphia v. AmericanRadiator Standard Sanitary Corp, 487 F.2d 161 (3d Cir. 1973)("Lindy I"), appeal following remand, 540 F.2d 102 (3d Cir. 1976) ("Lindy II"), the Third Circuit Court of Appeals set forth guidelines for the computation of fee awards as follows:
 First, the court must determine the hours reasonably expended by counsel that created, protected, or preserved the fund. Second, the number of compensable hours is multiplied by a reasonable hourly rate for the attorney's services. Hourly rates may vary according to the status of the attorney who performed the work (that is, the attorney's experience, reputation, practice, qualifications, and similar factors) or the nature of the services provided. This multiplication of the number of compensable hours by the reasonable hourly rate was said to constitute the "lodestar" of the court's fee determination.
 The "lodestar" then could be increased or decreased based upon the contingent nature or risk in the CT Page 10795 particular case involved and the quality of the attorney's work. An increase or decrease of the lodestar amount is referred to as a "multiplier."
Id. at 243.
The Lindy approach was adopted by many of the federal circuit courts. In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933,76 L.Ed.2d 40 (1983), the United States Supreme Court gave the Lindy
lodestar approach its imprimatur, at least in statutory fee cases. In Hensley, Justice Powell wrote:
 The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.
461 U.S. at 433.
The lodestar method of calculating attorneys fees has been criticized for a number of reasons, including the following: it increased the workload of the judicial system; elements of the calculation process are insufficiently objective and are subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund; Lindy encourages lawyers to expend excessive hours and engage in duplicative and unjustified work and inflate their normal billing rate; and it creates a disincentive for the early settlement of cases. Reportof the Third Circuit Task Force on Court Awarded Attorney Fees,108 F.R.D. 237, 246-249 (1985).
In Hernandez v. Monterey Village Assoc. Ltd.,24 Conn. App. 514, 517, 589 A.2d 888 (1991), the Appellate Court endorsed the following twelve factor scale adopted by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc.,488 F.2d 714, 717-19 (5th Cir. 1974):
 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due the acceptance CT Page 10796 of the case; (5) the customary fee; (6) whether the fee is fixed or contingent: (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
With respect to the first factor of the Johnson scale, time and labor required the court finds as follows. The plaintiffs were represented throughout this litigation by the New York firm of Stamell Schager, LLP and the Connecticut firm of Gorman 
Enright, P.C. The plaintiffs' attorneys filed the original complaint and responded to one or more requests to revise the complaint filed by the defendants and filed several amended complaints. They also responded to one dispositive motion filed by the defendant Lincoln National, a Motion to Strike. However, that Motion was never argued because the plaintiffs withdrew the complaint as to Lincoln National. The plaintiffs' attorneys did file Interrogatories and Production Requests and review documents produced by the defendants. They took no depositions and no evidentiary hearings occurred prior to settlement.
The plaintiffs' attorneys have provided the court with a breakdown of their charges by time, and billing rate. That breakdown indicates that attorneys in the firm of Stamell 
Schager expended 1,933.5 hours working on the case for which they charge $815,852.00. The foregoing includes 490.2 hours expended by R.J. Schager, a partner in the firm, for which he seeks $435 per hour and 1,244.2 hours by Jared Stamell, also a partner in the firm, who also seeks $435 per hour. In a Supplemental Affidavit filed by Jared Stamell, he avers that his firm normally works on a contingency fee basis, but that he has one client who pays him at the rate of $440 per hour and two others who have paid at the rate of $350 per hour. Based on the foregoing, the court finds that $400 is a reasonable billing rate for attorneys Stamell and Schager.
The firm of Stamell Schager has also indicated that law clerks and paralegals expended 1,215.59 hours at rates varying from $75 per hour to $100 per hour, for which the firm seeks $104,784.25. The firm also seeks expenses in the amount of $222,027.28. CT Page 10797
The firm of Gorman Enright, P.C. indicates that its lawyers expended 1,457.6 hours for which it seeks payment in the amount of $307,063.00. The foregoing includes 932.1 hours expended by E. Giovanniello at the rate of $175, a billing rate which the court finds to be reasonable and 518.6 hours by John Gorman at a rate of $275 per hour, a billing rate which is reasonable. Gorman 
Enright also seeks to recover for 69.67 hours of law clerk and paralegal time at rates ranging from $60 to $85 per hour. That firm also seeks to recover expenses in the amount of $1,431.76.
After carefully reviewing the nature of the work listed on the billing records, the court finds that most of the work by attorneys Stamell, Schager, Giovanello and Gorman was expended in revising pleadings, meeting with each other and meeting with the defendants' attorneys. In a complicated case such as this one, the plaintiffs' lawyers must confer with each other. However, it is not reasonable to expect the client to be billed for the full time of each lawyer when the plaintiffs' lawyers confer with each other. It is also not reasonable to expect that a lawyer would (or could) truly devote 25.2 hours in one day to his clients' affairs as Attorney Stamell claims to have done on November 30, 1998. After deducting for time not reasonably expended the court finds the following to be the reasonable hours devoted by the firm of Stammel Schager:
Lawyers Total Hours Hourly Rate Lodestar
J.B. Stamell 1,041.2 $400 $416,480 R.J. Schager 423.2 $400 $169,280 L.C. Cohen 74.0 $325 $24,050 M. Rago 4.8 $260 $1,248 M.Recht 120.3 $300 $36,090 _____ _______ 1,663.5 $647,148
The court further finds that law clerks and paralegals at the firm of Stamell Schager, LLP devoted 1,215.59 hours to the case at a total cost of $104,784.25 and that that firm incurred or will incur expenses in the amount of $222,027.28, for a total time/expenses or "lodestar" of $973,959.53.
The court finds that lawyers in the firm of Gorman Enright, P.C. could reasonably bill their hours as follows:
Lawyers Total Hours Rate Lodestar
CT Page 10798
Enright, B.G. 3.6 $200 $720.00 Giovanniello, E. 885.6 $175 $154,980.00 Gorman, J.R. 506.0 $275 $139,150.00 King, P.A. 3.3 $185 $610.50 _____ ___________ 1,398.5 $295,460.50
Law clerks and paralegals at the firm of Gorman Enright devoted 69.67 hours to the case for a total billing amount of $5,094. The firm incurred $1,431.76 in expenses. The total time/expenses or lodestar of that firm is $301,986.26.
Based on the foregoing the total lodestar or time/expenses amount of both the plaintiffs' law firms is $1,275,945.70.
With respect to the second (difficulty), third (legal skill required), fourth (preclusion of other employment) and ninth (experience of attorneys) factors of the Johnson scale, the case did involve issues that were rather complex. In order to prosecute the case the plaintiffs' attorneys were required to become familiar with the opinions of experts, particularly actuaries. Dealing with the substantive issues as well as the logistical problems involved in a class action where the class numbered between 70,000 and 90,000 members certainly required a high degree of skill and sophistication. The firm of Stammel 
Schager has indicated that it has had a substantial amount of prior experience within the area of antitrust and class actions. The lawyers from the firm of Gorman Enright are experienced litigators of good reputation. The court cannot evaluate the attorneys' skills as litigators in the context of this case. Few litigation skills were required in this case since settlement occurred without the necessity of taking any depositions, or the presentation of any evidence. Moreover, this court did not preside over any aspect of this case other than the hearing on the proposed settlement. The plaintiffs' attorneys did not indicate that the acceptance of this case precluded them from other employment. However, the plaintiffs' attorneys have only so many hours that they can devote to clients and the time they devoted to this case clearly could not be devoted to any other cases.
The customary fee, and awards in similar cases, the fifth and twelfth factors, respectively, of the Johnson scale, are difficult to assess. The courts of this state are not frequently CT Page 10799 confronted with class action settlements at all, and face settlements like the present one even less frequently.[3] The plaintiffs' attorneys argue that 25% of the $20,250,000 settlement amount, or $5,250,000 is reasonable since it is comparable to percentage fee awards in other cases. That amount is more than four times the lodestar value of time devoted by the plaintiffs attorneys.
While in the abstract 25% of a common fund may seem reasonable, the size of the common fund and the relationship between the actual time devoted by the attorneys to the proposed percentage fee are factors which must be considered. This is probably why percentage fee awards vary greatly and the percentage of the total fund tends to decrease as the size of the fund increases.[4] In In re Presidential Life Securities,857 F. Sup. 331 (S.D.N.Y. 1994), the court approved an award of 25% of the total recovery. But the amount of the total recovery was $1,675,000, so the fee amount was $418,750. In In re CencoIncorporated Securities Litigation, 519 F. Sup. 322 (N.D. Ill. 1981), the attorneys fees awarded were less than 17% of the total fund of $3.5 million. In Behrens v. Wometco Enterprises, Inc.,118 F.R.D. 534 (S.D.Fla. 1988) the court indicated that it was following Johnson and applied a multiplier of 3 to the lodestar amount of attorneys fees of $221,696 to arrive at a total fee of $665,089, which was 17% of the total amount of recovery, $3.97 million.
An analysis of class action fee awards occurring between 1973 and 1990 indicates that the median percentage recovery where the litigation lasted for three years and the recovery was $20,000,000 was 16.7%[5] and the median lodestar multiplier where the attorneys fees and costs were $1.5 million was 1.99.[6] Under the percentage calculation of Connecticut General Statutes § 52-251c the legal fee awarded in a personal injury action where the amount of the recovery was $20,250,000 would be $2,210,000.
The sixth factor of the Johnson scale is whether the fee is fixed of contingent. In this case the fee was contingent, meaning, of course, that the plaintiffs' lawyers would receive no fee and would be out of pocket for substantial expenses in the event that the plaintiffs were unsuccessful in the litigation. The contingent nature of the fee certainly can justify an attorneys' fee which is more than the hourly rate value of the time spent by the attorneys. CT Page 10800
The amount involved and the results obtained is the eighth factor of the Johnson scale. The ostensible settlement amount is $20,250,000. However, as stated above, that figure is "soft" because there is no evidence as to how much of approximately half of that figure the defendants will actually pay over a five year period. The parties agree that the maximum amount recoverable by the plaintiffs was $40 to $50 million. Therefore, the settlement was less than half of what the plaintiffs would have recovered if successful. The settlement amount is a large number in the absolute sense. But the class of plaintiffs is also very large. Each plaintiff will receive approximately $50. Thus, the result here is little better than a "coupon settlement", a term used to describe settlements in class actions where the plaintiffs receive coupons or other noncash awards while the attorneys recover millions in fees.
Perhaps the best known coupon settlement is In re GeneralMotors Corporation Pick-Up Truck Fuel Tank Products LiabilityLitigation, 55 F.3d 768 (3d Cir. 1995) and the companion case,General Motors v. Bloyed, 916 S.W.2d 949 (Tex. 1996). In each case, the complaint alleged that side-saddle gas tanks on GMC trucks were susceptible to explosion on impact. Both nationally and in Texas, the settlement was reached where class members would receive certificates toward the purchase of another GMC truck within 15 months of receiving the coupons. The settlement was rejected by the Third Circuit Court of Appeals.
In their Supplemental Memorandum in Support of Attorneys Fees the plaintiffs have relied, inter alia, upon the cases of Arensonv. Board of Trade — City of Chicago, 372 F. Sup. 1349 (1974) andRoberts v. Texaco, Inc, 979 F. Sup. 185 (S.D.N.Y. 1997) in which the lodestar was increased substantially in order to arrive at an attorneys' fee award. When considered in the context of the "results" factor of Johnson, those cases are hardly analogous to the present one. In Arenson, the Court stated:
 Plaintiffs undertook to assert the illegality of the long established business practice of fixing commission rates in commodities exchanges on behalf of a class consisting of approximately 400,000 members. . . . At stake was the manner in which billions of dollars of business would continue to be done in the United States.
372 F. Supp. at 1353. CT Page 10801
Roberts was a race discrimination case brought on behalf of salaried African American employees of Texaco. The settlement was a cash fund of $115 million plus salary increases of 11.34% for all members of the class, making the total value of the settlement $172 million. The Court applied a 5.5 multiplier to the lodestar, which resulted in a fee of $19,154,144, or 11% of the fund.
The court has no information concerning any time limitations having been imposed on the attorneys by the clients (element seven of Johnson) or the nature and length of the professional relationship of the attorneys with the clients (element eleven)
The plaintiffs request a $5000 incentive fee for each of three Class representative policyholders in this case, Ms. Kroopnick and Joshua Jacobson, Trustee, Mr. Silk and Preferred Financial Corporation and Mr. Weaver. The plaintiffs have provided no evidence to indicate the time expended by the foregoing policyholders.
The court declines to approve any incentive fee for the following reasons. In Connecticut "[i]t is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute.Verrastro v. Sivertsen, 188 Conn. 213, 217, 448 A.2d 1344
(1982)." M. DeMatteo Construction Company v. New London,236 Conn. 710, 715, 674 A.2d 845 (1996). "[T]he law of restitution . . . generally confines the right to restitution to professionals, such as doctors and lawyers. 2 George E. Palmer,The Law of Restitution, ch. 10 (1978)." Matter of ContinentalIllinois Securities Litigation, 962 F.2d 566, 571 (7th Cir. 1992). In Connecticut even a lawyer who represents herself pro se cannot recover any amount for her time devoted to the litigation.Lev v. Lev, 10 Conn. App. 570, 575, 524 A.2d 674 (1987).
In Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) the United States Supreme Court stated:
As concisely recalled in a recent Seventh Circuit opinion:
 "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this CT Page 10802 problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Mace v. VanRuCredit Corp., 109 F.3d 338, 344 (1997).
Where the individual plaintiffs potential recovery is so "paltry" that the class action mechanism itself is insufficient to provide an incentive to vindicate his rights, then the rights are not worthy of vindication.
Based on the foregoing the court finds that the settlement is fair and reasonable, does not approve any incentive awards to any plaintiff and approves an attorneys fee award of $2,551,890.
By the court,
Aurigemma, J.